

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00409-CR

Adam **MARROQUIN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR4359
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed:  January 31, 2018

AFFIRMED

A jury found Adam Marroquin guilty of the offense of attempting to take a weapon from a peace officer, and the trial court assessed Marroquin's punishment at two years' imprisonment in a state jail facility, suspended in favor of four years of community supervision.  Marroquin contends the trial court erred by refusing Marroquin's request to submit a defensive jury instruction pursuant to Penal Code section 38.14(d).  We affirm the judgment of the trial court.

BACKGROUND

The State presented testimony from Daniel Terrazas, former Best Buy mobile department manager, and Officers Juan Silva and Steven Appelt of the San Antonio Police Department (SAPD). The State also introduced a recording from the COBAN recording systems in Officer Silva's and Officer Appelt's patrol cars.[1] The defense presented testimony from Marroquin and Connie Torres.[2] The defense also introduced medical records and photographs of injuries Marroquin alleged he sustained as a result of the encounter with Silva.

**State's Witnesses and Evidence**

Terrazas testified he was notified by Best Buy loss prevention officers on December 3, 2013, that a suspicious-looking man, who was later identified as Marroquin, concealed some items in his clothing. According to Terrazas, it was the store's general practice that if a shoplifter returned the stolen items, a "no trespassing offense" was pursued in lieu of filing theft charges. Although Terrazas confronted Marroquin, Marroquin denied stealing any items. Terrazas then requested that the loss prevention staff contact authorities, and he and other Best Buy employees blocked the store's exit so that Marroquin could not leave. Terrazas testified that a woman, who was later identified as Torres, asked the employees to allow Marroquin to leave the store.

According to Terrazas, once employees contacted authorities, Marroquin returned some, but not all, of the items he stole. The responding SAPD officer, Officer Silva, arrived within three to five minutes of the initial call. Terrazas and Officer Silva escorted Marroquin to the loss prevention office after Officer Silva patted down and handcuffed Marroquin. Terrazas testified

---

[1] The COBAN systems in Officers Silva's and Appelt's vehicles recorded both audio and video. Officer Silva carried a microphone on him, which transmitted audio to his vehicle's camera when he went into Best Buy where the incident took place. The video portion of the recordings captured only images in the line of sight of the vehicles.

[2] At the time of the incident, Torres and appellant were girlfriend and boyfriend. At the time of trial, they were engaged.

that as Officer Silva was questioning Marroquin, Torres went to the loss prevention office "three or four" times. Officer Silva testified he eventually told Torres that if she came back to the office again, he would arrest her for interfering. Torres returned again as Officer Silva was attempting to speak with Marroquin, and Officer Silva followed through with his warning by placing Torres under arrest, handcuffing her, and taking her into the loss prevention office.

According to Officer Silva, until that point, Marroquin was calm and they were "talking fine." However, when Officer Silva took Torres into the office Marroquin became enraged, stood up, and refused to sit back down even upon being directed to do so several times. Terrazas testified that when Torres was placed in handcuffs, Marroquin stood up inside the office, which was a small room, and became aggressive. Terrazas related that although Officer Silva told Marroquin to sit down several times, Marroquin did not follow the officer's directions.

Eventually, Marroquin sat but quickly stood back up. According to Officer Silva, Marroquin continued this behavior until he kicked out at Officer Silva's torso. Terrazas testified Marroquin pushed at Officer Silva using his whole body, and the two began to struggle. According to Terrazas, Officer Silva then "turned [Marroquin] over" on the floor. Officer Silva testified he struggled with Marroquin and held Marroquin to the floor to gain control of the situation. Officer Silva testified that although he was on top of Marroquin, Marroquin continued attempting to stand and did not follow directions to stay down and remain calm.

Terrazas testified it looked as though Marroquin attempted to reach for Officer Silva's gun, but instead grabbed Officer Silva's radio off his utility belt. Terrazas described how, as Marroquin attempted to take Officer Silva's gun, he unhooked Officer Silva's utility belt and dislodged items from the belt.

Officer Silva testified that as Marroquin continued to struggle, Marroquin pushed the hood down on Officer Silva's holster. Officer Silva demonstrated that pushing the hood down required

deliberate pressure. Officer Silva testified that when Marroquin attempted to take the firearm, he struck Marroquin several times with a closed fist to prevent Marroquin from grabbing the firearm. Marroquin also grabbed for Officer Silva's utility belt and managed to unclip it during the struggle. Officer Silva testified he asked Marroquin whether he was reaching for the weapon.

Marroquin replied he was trying to stand up. However, according to Officer Silva, Marroquin continued to reach for his utility belt in a way that made Officer Silva believe Marroquin was trying to remove the belt and weapon. Marroquin continued to struggle and did not comply with directions. Eventually, Officer Silva was able to reach his radio handset, request backup, and secure Marroquin.

Once Marroquin and Torres were both secured, Officer Silva escorted them outside to his patrol car as Marroquin continued to curse at him and struggle. Officer Appelt arrived on the scene as Officer Silva escorted Marroquin and Torres, both handcuffed, toward a patrol car. According to Officer Appelt, Marroquin was "giving Officer Silva a hard time. He was trying to jerk away from him, and they were – both of the arrested people were being loud and mouthy, and he was having trouble controlling both of them at one time." Officer Appelt took control of Marroquin, who continued to be uncooperative and attempted to get away from Officer Appelt. After a brief struggle during which Marroquin stated he didn't want to get in the patrol car, Officer Appelt placed Marroquin in his patrol car and transported Marroquin downtown. According to Officer Appelt, Marroquin was "combative" during the ride and told Officer Appelt he "didn't do shit." Officer Appelt testified he did not observe any injuries on Marroquin.

Officer Silva testified he had been with SAPD for fifteen years at the time of the incident and that no one had attempted to take his weapon. Officer Silva also testified he believed Marroquin wanted to take the weapon to harm him. Following the incident, Officer Silva filled

out a use of force form in which he stated he used force against Marroquin by using his hands and fist. Officer Silva noted on the form that neither he nor Marroquin sustained injuries.

When asked about Officer Silva's actions, Terrazas testified he would have done the same thing if he had been in Officer Silva's situation.

**Defense Witnesses and Evidence**

Torres testified that on Dec. 3, 2013, Marroquin went into the Best Buy to do some shopping while she waited in the car. Torres testified she went into the store when she became worried that Marroquin had not returned after about thirty minutes. When she entered the store, she saw that Marroquin was handcuffed. When Torres asked what had happened, employees referred her to a manager who led her to the loss prevention office. Torres testified that when she went to "the back of the store," she was immediately, aggressively handcuffed and placed in a small room with Marroquin.

Marroquin testified he and Officer Silva were the only ones in the office initially and things were "pretty calm" at first. Marroquin heard Torres's voice in the distance once and testified that Officer Silva told her to leave. According to Marroquin, upon hearing Torres's voice again mid-conversation, Officer Silva rushed out of the office. Marroquin testified he heard Officer Silva and Torres struggling outside the office and saw Silva shove a handcuffed Torres into the office. Torres testified Officer Silva pushed her "frantically" and without reason.

Marroquin acknowledged he stood up and continued standing despite being directed to sit. According to Marroquin, Officer Silva became aggressive and shoved him against the wall. Marroquin described leaning against some boxes and then being knocked down by Officer Silva when he attempted to get up. Marroquin testified he fell on his side and that Officer Silva punched him in his stomach, groin, and face. Marroquin further testified Officer Silva continued to punch him until he fell forward before asking if he had tried to take the officer's weapon.

Torres also testified that Officer Silva pushed Marroquin when he stood up. According to Torres:

> The officer — after the officer pushed me, the — [Marroquin] was standing up, and the officer saw [Marroquin] and asked [Marroquin], what the hell are you doing up? I told you to sit down. Pushes [Marroquin] into a corner, falls — or, I'm sorry, pushes [Marroquin] and [Marroquin] falls down into a corner. And — sorry. He falls down — he falls down to a corner and the cop is just beating him senselessly. Just beats him. He's beating him and beating him.

When asked how long the incident lasted, Torres responded: "For about a good minute. For a good while. For a good five minutes."

Torres acknowledged she heard Officer Silva ask Marroquin if he was "trying to grab" his gun, but asserted she never saw Marroquin reach for the officer's weapon. According to Marroquin, he did not attempt to take Officer Silva's weapon. Marroquin testified he was only trying to stand up.

Marroquin testified he had trouble remembering what happened after the incident in the office, although he did recall walking to the patrol car and being taken into custody. Torres testified that after Officer Silva struck Marroquin, she and Marroquin were taken to patrol cars by Officer Silva, who told them to shut up.

Marroquin introduced into evidence six photographs, which he stated were taken a few days after the incident. Marroquin also introduced medical records from two different hospitals, dated December 6, 2013 and December 22, 2013. According to Marroquin, he experienced headaches after the incident and sought medical treatment. Marroquin testified he was diagnosed with migraines, tendonitis, scrapes and abrasions, and subconjunctival hemorrhaging and was prescribed medication. Marroquin testified he went to a different hospital on December 22 because he continued to experience headaches.

## JURY CHARGE ERROR

Marroquin contends he suffered harm because the jury charge did not include an instruction on the statutory defense included in section 38.14(d) of the Penal Code. TEX. PENAL CODE ANN. § 38.14(d). Marroquin argues the evidence presented at trial raised the requested defensive issue and he was, therefore, entitled to the instruction. Focusing on the portion of section 38.14(d) that states the defense is available if the officer was using force "in excess of the amount of force permitted by law," Marroquin argues the trial court was required to give the instruction because "[t]he literal text of section 38.14 focuses only on a police officer's actions, which under the applicable circumstances, directly provide a path to the statute's defense." In the alternative, Marroquin argues the appropriateness of a self-defense instruction because the State's evidence raised the issue of self-defense.

### Standard of Review and Applicable Law

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. In fulfilling that duty, the trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007); *see* TEX. PENAL CODE §§ 2.03(d), 2.04(d).

When reviewing a trial court's ruling denying a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested instruction to determine whether it is sufficient to raise the defensive issue. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

Section 38.14(b) provides that a person commits an offense "if the person intentionally or knowingly and with force takes or attempts to take from a peace officer, … the officer's firearm … with the intention of harming the officer or a third person." TEX. PENAL CODE ANN. § 38.14(b). Section (d) provides that "[i]t is a defense to prosecution under this section that the defendant took or attempted to take the weapon from a peace officer, … who was using force against the defendant or another in excess of the amount of force permitted by law." *Id*. § 38.14(d).

The defendant bears the burden of producing some evidence that raises self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). A defense is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). When deciding whether a defensive issue has been raised by the evidence, a court must rely on its own judgment, formed in light of its own common sense and experience, as to the limits of rational inference from the facts that have been proven. *Id*. at 658. "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Walters*, 247 S.W.3d at 209; *see Shaw*, 243 S.W.3d at 658; *see also Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013) ("[A] judge must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or is not credible."). However, the evidence must be such that it will support a rational jury finding with respect to each

element of the defense. *Shaw*, at 658. In other words, even when taken at face value and viewed in the light most favorable to the defendant, if the evidence does not comport with a defensive theory, a defendant is not entitled to the defensive instruction. *See Ferrel*, 55 S.W.3d at 591.

## Discussion

To receive a defensive justification instruction, a defendant must first admit to the conduct charged in the indictment and offer evidence justifying the conduct. *Shaw*, 243 S.W.3d at 659 ("a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct"); *see also Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999).

As noted above, Marroquin denied the allegations in the indictment. According to both Marroquin's and Torres's testimony, Marroquin did not attempt to take Officer Silva's weapon at any time. By denying all elements of the alleged offense, including the culpable mental state, Marroquin did not seek to justify otherwise criminal conduct. *See Johnson v. State*, 715 S.W.2d 402, 406 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). Therefore, only the evidence presented by the State could have raised the defensive issue. *Shaw*, 243 S.W.3d at 657–58; *Ferrel*, 55 S.W.3d at 591.

During his testimony, Officer Silva admitted to using force against Marroquin, but not until after Marroquin engaged him in a physical struggle. Officer Silva's testimony, which was corroborated by Terrazas's testimony, indicated Marroquin was the aggressor during the altercation. Terrazas testified Marroquin refused to cooperate with Officer Silva's instructions and used his body to "bump" Officer Silva before Officer Silva put Marroquin on the floor and attempted to hold him there to gain control of the situation. Both Terrazas and Officer Silva

testified Marroquin attempted to reach for Officer Silva's weapon. Our review of the COBAN recording corroborates Officer Silva's testimony.

This is some evidence of Marroquin's attempt to take the weapon as well as some evidence Officer Silva used force to subdue Marroquin and prevent him from taking the weapon. However, we are not convinced this constitutes some evidence of Officer Silva "using force against [Marroquin] in excess of the amount of force permitted by law" prior to Marroquin's attempt to take Officer Silva's weapon. *See* TEX. PENAL CODE ANN. § 38.14(d) (stating it is a defense to prosecution if the defendant attempted to take the weapon from an officer who was using force against the defendant "in excess of the amount of force permitted by law").

The Penal Code does not specifically define what force is "in excess of the amount of force permitted by law." However, two of our sister courts in unpublished opinions have interpreted this phrase to mean "excessive force." *See Rico v. State*, Nos. 13-08-00257-CR and 13-08-00258-CR, 2009 WL 1623343, at *6 (Tex. App.—Corpus Christi 2009, pet. ref'd) (not designated for publication); *Hall v. State*, Nos. 03-99-00339-CR and 03-99-00340-CR, 2000 WL 234814, at *9-10 (Tex. App.—Austin 2000, pet. ref'd) (not designated for publication). We agree, for purposes of this analysis, that force in excess of the amount of force permitted by law is equitable to the term excessive force.

Although excessive force has not been examined previously in the context of section 38.14(d), we find the examination of excessive force in the context of Fourth Amendment claims to be instructive. In the Fourth Amendment context, we review excessive force claims using an objectively reasonable standard. *Hereford v. State*, 339 S.W.3d 111, 119 (Tex. Crim. App. 2011). We evaluate whether, given the facts supported by the record, the force that was used was objectively reasonable. *Id.*; *see Graham v. Connor*, 490 U.S. 386, 396 (1989).

In this case, the record indicates Marroquin became aggressive toward Officer Silva before any use of force occurred. Terrazas testified Marroquin was the aggressor and the altercation was initiated by Marroquin physically engaging Officer Silva. Further, the record indicates the force used by Officer Silva was limited to gaining control of the situation and preventing Marroquin from taking the officer's weapon. Officer Silva testified he put Marroquin on the floor and used his body weight against him to gain control of the situation. Officer Silva further testified he did not strike Marroquin until after Marroquin attempted to take the weapon. Although Marroquin presented medical records indicating he sustained injuries, there was no evidence presented to establish the altercation with Officer Silva was the cause of the injuries. Both Officers Silva and Appelt testified Marroquin demonstrated no signs of injury immediately following the incident.

The record before us supports a conclusion that Officer Silva's actions in subduing Marroquin and preventing him from taking the weapon were reasonable under the circumstances. The record further supports a conclusion that the force used by Officer Silva occurred in response to Marroquin's initial aggression and his attempt to take Officer Silva's weapon. Accordingly, the force used by Officer Silva was not "in excess of the amount permitted by law."

Marroquin's defensive evidence neither admitted to each element of the offense, nor provided a justification for committing the offense. Further, even taken at face value and in the light most favorable to Marroquin, the State's evidence did not present "some evidence" Officer Silva used force in excess of what is permitted by law. *See Shaw*, 243 S.W.3d at 657–58; *Ferrel*, 55 S.W.3d at 591. Thus, the evidence did not comport with the 38.14(d) defensive theory. *See Ferrel*, 55 S.W.3d at 591. Consequently, Marroquin was not entitled to the requested defensive instruction, and the trial court did not err by denying Marroquin's request for a defensive instruction pursuant to section 38.14(d).

Marroquin's sole issue on appeal is overruled.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

Irene Rios, Justice

DO NOT PUBLISH